IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MITCHELL HUNT )<br>)<br>v. )<br>)<br>WILSON COUNTY JAIL )<br>ADMINISTRATOR, et al. ) | NO. 3:14-1044 |

TO: Honorable Aleta A. Trauger, District Judge

# REPORT AND RECOMMENDATION

By Order entered May 16, 2014 (Docket Entry No. 3), this action was referred to the Magistrate Judge to enter a scheduling order for management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Presently pending before the Court is the Defendants' Motion for Summary Judgment (Docket Entry No. 35), to which the Plaintiff has filed a response in opposition (Docket Entry No. 42). Set out below is the Court's recommendation for disposition of the motion.

## I. BACKGROUND

The Plaintiff is currently a prisoner confined at the Bledsoe County Correctional Complex ("Bledsoe") within the custody of the Tennessee Department of Correction ("TDOC"). On April 23,

2014, he filed this action pro se and in forma pauperis under 42 U.S.C. § 1983 for alleged violations of his civil rights that occurred at the Wilson County Jail ("Jail"), in Lebanon, Tennessee, where he was confined prior to entering the TDOC. He seeks only punitive damages as relief. Named as defendants are Jail Administrator Doug Whitefield and Wilson County Sheriff Robert Bryan, who are both sued in only their official capacities. See Complaint (Docket Entry No. 1), at 4. By the Order of referral, the Court dismissed the Plaintiff's claim that the meals served at the Jail were constitutionally inadequate, but found that the Plaintiff alleged arguable legal claims for relief based upon allegations that his religious rights were violated at the Jail. Specifically, the Plaintiff alleges that:

> 1. On February 17, 2014, his request to speak to his Muslim Imam was denied for the stated reason that Islamic clergy cannot visit because they are not a part of the Wilson County Jail Ministry; and
>
> 2. A Qur'an cannot be sent to an inmate or donated because Qur'ans are sold in the Jail commissary.

See Docket Entry No. 1, at 5.

By Order entered July 30, 2014 (Docket Entry No. 23), the plaintiff was permitted to amend his complaint to add a claim that, from May 5, 2014, to July 22, 2014, Jail officials denied him access to law books in retaliation for his filing of the instant lawsuit. See Amendment (Docket Entry No. 22). A scheduling order (Docket Entry No. 17) was entered providing for a period of pretrial activity in the action. All scheduling order deadlines have expired.

The Defendants, in their official capacities, move for summary judgment arguing that there are no genuine issues of material fact that require resolution of this case by a jury. They contend that the Plaintiff has not established that he was deprived of his constitutional right to exercise his

religion and has not presented evidence that a policy or custom of Wilson County played any part in the alleged constitutional violation, as is required for a claim of municipal liability. The Defendants further assert that the Plaintiff failed to exhaust available administrative remedies prior to filing his lawsuit. In support of their motion, the Defendants rely upon the Declaration of Doug Whitefield and attached documents (Docket Entry No. 35-1), the Declaration of Robert Bryan (Docket Entry No. 35-2), the Plaintiff's answers to interrogatories (Docket Entry No. 35-3), and a Statement of Undisputed Material Facts (Docket Entry No. 37).

The Plaintiff responds in opposition with a brief Response (Docket Entry No. 42), his own Statement of Disputed Facts (Docket Entry No. 42-1, at 1-2), a copy of the Defendants' Answer, id. at 3-5, and copies of his responses to discovery requests served upon him by the Defendants. Id. at 6-10. The Plaintiff argues that inmates at the Jail are not allowed to speak to the Defendants or to any officials at the Jail who rank higher than a correctional officer and, thus, the Defendants should be deemed liable for the words and actions of the correctional officers at the Jail. He further contends that he filed a grievance about the denial of a Qur'an and the denial of a religious visit, but that did not receive a response to the grievance.

## II. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable

jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a

well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

## III. CONCLUSIONS

A. The Plaintiff's First Amendment Religious Access Claim

Prison inmates do not lose their First Amendment right to exercise their religion because of incarceration. Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). However, "the circumstances of prison life may require some restriction on prisoners' exercise of their religious beliefs." Walker v. Mintzes, 771 F.2d 920, 929 (6th Cir. 1985). The First Amendment does not require that prison officials provide inmates with the best possible means of exercising their religious beliefs nor does it require that general prison policies and concerns become subordinate to the religious desires of any particular inmate, and the internal administration of a correctional facility is a function legitimately left to the discretion of prison administrators. See Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Procunier v. Martinez, 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). The touchstone of a challenge to a prison policy impinging upon a religious right is the reasonableness of the policy in relation to penological interests. Turner, 482 U.S. at 89.

The Defendants set forth evidence that the Jail's policy regarding possession of a Qur'an by inmates at the Jail is that inmates may purchase a Qur'an from the Jail Commissary or a Qur'an may be donated to the Jail or sent to an inmate. See Declaration of Whitefield (Docket Entry No. 35-1), at ¶¶ 3-5. The Defendants assert that, although the normal policy of the Jail is to not provide inmates with free copies of a Qur'an, the plaintiff was provided with a free Qur'an in August 2014. Id. at 5. The Defendants further set forth evidence that the Jail's policy regarding visits by a clergy member is that a clergy member may visit an inmate during normal visiting hours but that any clergy member who wishes to do more than visit an inmate during normal visiting hours must become part of the "Wilson County Jail Ministry." Id. at ¶ 6-7. This requires the clergy member to undergo a background check and orientation process prior to approval. Id. at ¶ 8. The Defendants assert that this screening process is aimed at determining the legitimacy of the clergy member's participation in the Jail Ministry and to ensure that contraband is not imported into the Jail. Id. at ¶ 9.

The Plaintiff contends that these policies were not followed at the Jail as evidenced by two statements made by correctional officers. The Plaintiff alleges that, when he asked an officer about having an Islamic clergy member visit, he was told that "if they are not a part of the Wilson County Jail Ministry they are not allowed." See Docket Entry No. 42-1, at 6. He also alleges that, when he asked if someone could mail him a copy of a Qur'an, a correctional officer told him "it wouldn't do any good, it'll only get mailed back." Id. There is no evidence showing that the Plaintiff took any steps beyond his two general questions to correctional officers at the Jail in an attempt to seek either a visit by an Islamic clergy member or a copy of a Qur'an.

Even when the Court assumes as true that the purported statements were made as alleged by the Plaintiff, there is simply insufficient evidence before the Court upon which a reasonable jury

could find in favor of the Plaintiff on his claim that his First Amendment religious rights were violated at the Jail and that punitive damages should be awarded to him. The Plaintiff has not challenged the stated policies themselves but merely the application of the policies on two occasions. Further, neither statement, in and of itself, provides evidence of an actual infringement on the plaintiff's ability to practice his religion, and the Plaintiff has offered no other evidence showing any actual steps were taken by prison officials or staff to prevent him from obtaining a Qur'an or from visiting with Islamic clergy members. Summary judgment should be granted to the Defendants on this claim.

With respect to the Plaintiff's desire to obtain a Qur'an, the First Amendment does not require that free copies of religious materials be provided to inmates. See Haynie v. Turnbo, 996 F.2d 307 (5th Cir. 1993); Lewers v. Pinellas Cnty. Jail, 2009 WL 3053702, *3 (M.D. Fla. Sept. 18, 2009); Brown v. Ridge, 2006 WL 1581167, *19 (W.D. La. Jan. 19, 2006). The Jail's policy of allowing an inmate to purchase a copy of a Qur'an from the commissary or to have a copy mailed to the inmate is a reasonable means of providing access to a Qur'an. To the extent that the Plaintiff contends that he was prevented from obtaining a Qur'an, he has not offered any evidence that anyone actually attempted to mail to the Plaintiff a copy of the Qur'an but the Qur'an was rejected by staff at the Jail or that anyone attempted to donate a Qur'an to the Jail but was prevented from making such a donation.

With respect to the Plaintiff's request for a visit by a religious clergy member, there is similarly no evidence that an Islamic clergy member actually tried to visit the Plaintiff but was prevented from visiting the Plaintiff. There is further no evidence that any Islamic clergy member

sought to become a part of the Wilson County Jail Ministry but was not approved for inclusion in the ministry and thus was prevented from visiting with the Plaintiff.

At best, the plaintiff's complaints are about de minimis or isolated infringements. Such infringements do not support an actionable constitutional claim. See Colvin v. Caruso, 605 F.3d 282, 293 (6th Cir. 2010); Mabon v. Campbell, 2000 WL 145177 (6th Cir. Feb. 1, 2000); Stoner v. Jett, 1991 WL 138439 (6th Cir. July 29, 1991).[1]

B. The Plaintiff's Retaliation Claim

The Defendants have not addressed the retaliation claim raised by the Plaintiff in his amendment to the Complaint. Accordingly, they have not shown that summary judgment is warranted on this claim because of the absence of genuine issues of material fact.

Nonetheless, this claim warrants dismissal. The Plaintiff has sued the Defendants in only their official capacities. See Complaint, at 4, and Order entered May 16, 2014 (Docket Entry No. 3), at 4. An official capacity action seeks damages not from the individually named defendant but from the entity for which the defendant is an agent. Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994); Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir. 1993). Thus, the Plaintiff's official capacity suit is essentially a claim against the Wilson County municipal government. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); Fox v. Van Oosterum, 176 F.3d 342, 347–48 (6th Cir. 1999). However, punitive damages may not be assessed against a

---

[1] Because the Court finds no evidence to support the Plaintiff's claim that his First Amendment religious rights were violated, it is unnecessary to address the Defendants' alternative arguments for dismissal based upon the lack of administrative exhaustion and the lack of evidence of a municipal policy.

municipality for claims brought under 42 U.S.C. § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S. Ct. 2748, 2762, 69 L. Ed. 2d 616 (1981); Center for Bio-Ethical Reform, Inc. v. City of Springboro, 477 F.3d 807, 819 (6th Cir. 2007). Accordingly, the plaintiff fails to seek relief which can be granted in this action and summary judgment is warranted in favor of the Defendants on this claim.[2]

### RECOMMENDATION

Based on the forgoing, the Court respectfully RECOMMENDS that the Motion for Summary Judgment (Docket Entry No. 35) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                          Respectfully submitted,

                                          _____
                                          JULIET GRIFFIN
                                          United States Magistrate Judge

---

[2] The bar on punitive damages equally applies to the Plaintiff's religious access claim and provides an additional basis for dismissal of that claim.